UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAUL WILLETT, | ) | |
| Plaintiff | ) | |
|  | ) | CIVIL ACTION |
| VS. | ) | NO: 04-12449-EFH |
|  | ) | |
| E & S FISHERIES, INC., | ) | |
| Defendant | ) | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff in the above captioned matter and opposes Defendant E & S Fisheries, Inc.'s Motion for Summary Judgment. As grounds thereof the Plaintiff relies upon the below Memorandum, the attached Response to Defendant's Statement of Undisputed Facts and Plaintiff's Statement of Disputed Facts as well as the attached Affidavit of Paul Willett attached to this opposition as Ex. "A".

FACTS

This Jones Act Seaman's cases arises from a relatively minor injury. In the fall of 2003 the Plaintiff was employed as a deckhand upon the Defendant's commercial scallop vessel when he cut his toe on a shell fragment inside his boot. The cut became infected and eventually resulted in the amputation of the toe.

At the time of the incident the Plaintiff was working as a deckhand. The other deckhand assigned to his watch at the time of Plaintiff's injury was called "Mikey" by the crew, although that was not his real name. Affidavit of Paul Willett, P. 1, Para. 3 (Attached as Ex. "A"). "Mikey" was extremely small (less than 5'4", 100-125 lbs) and

was not able to perform the normal tasks of a deckhand. Affidavit of Paul Willett, P. 1, Para. 4-5. Depo. of Plaintiff, pp. 40-41. (Defendant's Ex. "A"). In particular, when the vessel was under weigh "Mikey" could not reach overboard far enough to flare the dredges when the vessel set its gear. Affidavit of Paul Willett, P. 2, Para. 8.; Depo. of Plaintiff, P. 49 (Defendant's Ex. "A"). The proper and customary procedure for setting the dredges on a commercial scalloper requires two deckhands, one to flare the port dredge and one to flare the starboard dredge. Affidavit of Paul Willett, P. 2, Para. 7. When the Plaintiff was on watch with "Mikey" the Plaintiff was required to quickly flare on dredge and then run across the deck to flare the other so that the two dredges could be set at the same time. Affidavit of Paul Willett, P. 2, Para. 8.

At the time of his injury the Plaintiff was running across the deck to flare the opposite dredge. Affidavit of Paul Willett, P. 2-3, Para. 9; Depo of Plaintiff, pp. 44-45 (Defendant's Ex. "A"). As he was running across the deck Plaintiff's banged his foot on a pile a scallops. Id. Upon hitting his foot on the pile of scallops the Plaintiff felt something stab his left 2nd toe. Id. Plaintiff continued to set the gear and then sat down took off his boot shook it out and observed bits of shell come out. Id. For the remainder of the watch the Plaintiff felt pain where his left 2nd toe had been stabbed. Id. At the end of the watch Plaintiff removed his boots and socks and observed a small cut on his left 2nd toe in the location where he had felt the stab. Id. In the days that followed this incident the cut on Plaintiff's left 2nd toe became infected. Affidavit of Paul Willett, P. 3, Para. 10. The infection was eventually brought under control but it required the amputation of Plaintiff's toe. Id.

ARGUMENT

This case involves a seaman's claim for personal injuries. "Admiralty Suites for personal injury are conducted with extraordinary solicitousness for the seaman. Directed verdicts for defendants in such case are rare." Santana v. U.S., 572 F.2d 331,335 (1st Cir. 1977). "The burden on the plaintiff to prove proximate cause in action based on the Jones Act and general maritime law is very light". Id. " Under the Jones Act, liability exists if the negligence contributed, even the slightest, to the plaintiff's injury. Id.

It is well established that a vessel owner owes a duty to provide a vessel manned with a competent and adequate crew. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 339. The duty to provide a competent and adequate crew applies both to the vessel in general as well as the particular task being performed. Waldron v. Moore-McCormack Lines, Inc. 386 U.S. 724, 87 S.Ct. 1410 (1967); Perez v. Marine Transport Lines, Inc. 661 F.2d 254, (1st cir. 1979). The duty to provide a competent and adequate crew arises under both the general maritime law for unseaworthiness as well as the Jones Act for Negligence. Lepard v. American River Trans. Co., 287 F.Supp 2nd (D.IL 2003); Billedeaux v. Tidex, Inc. and the M/V Louis Tide, 3 F.3d 437 (5th cir. 1993).

Here the Plaintiff has provided sufficient evidence to establish that the job the Plaintiff was required to perform at the time of the incident (flaring the dredges) properly and customarily required two deckhands. The Plaintiff has provided sufficient evidence to establish that the deckhand assigned to work with the Plaintiff on his watch (Mikey) was not competent to perform the task of flaring the dredges and that as a result Plaintiff was required to perform both jobs. The incompetence of the fellow deckhand to perform the job of flaring the dredges establishes unseaworthiness. The fact that the captain and

other crew where aware of Mikey's inability to perform this job establishes that the Defendant was on notice and is sufficient to establish a claim for Negligence under the Jones Act.  See, Depo. of Plaintiff, P. 41 (Defendant's Ex. "A").

The Plaintiff has provided sufficient evidence to establish that to perform the job of two deckhands (flaring the dredge) required him to run from one side of the vessel to the other and that as a result of running from one side to another he banged his foot causing him to cut his toe.  Accordingly, the Plaintiff has established a prima fascia case of Unseaworthiness under the General Maritime Law and a prima facie case of Negligence under the Jones Act.

In its Memorandum in support of its motion, the Defendant argues that "it is mere speculation that a shell or some other sharp object penetrated the Plaintiff's left second toe".  Def. Memorandum, P. 4.  The Plaintiff banged his left foot and felt something stab his left 2nd toe.  When he emptied his boot pieces of shell came out.  Plaintiff continued to feel pain from his left 2nd toe until the end of his watch when he examined the area and observed a cut on his left 2nd toe.  Plaintiff concedes that he did not observe a piece of shell actually enter the skin on his toe when he banged it, nor did he actually observe the cut in his left 2nd toe until 1-1/2 hours later after he got off watch.  However in the context of a motion for summary judgment "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [that parties'] favor".  Matsushita Elec. Indus. Co. Ltd. V. Zenith Radio Corp. 475 U.S. 574, 587 (1986).  Here, based upon the fact that Plaintiff felt something stab his left 2nd toe when he banged his foot, that he had continued to feel pain in this toe until he got off watch, and that he had pieces of shell in his boot, a reasonable

fact finder could draw the inference that the cut on his left 2nd toe which Plaintiff observed after his watch was over, was caused when he banged his foot running from one side to the other.

Through his deposition and the <u>Affidavit of Paul Willett</u>, the Plaintiff has established a prima facie case of Negligence under the Jones Act and Unseaworthiness under the General Maritime Law based upon the presence of an incompetent crewmember giving rise to an inadequate number crew assigned to a task. Defendant's claims that because there is no direct evidence that he cut his foot when he banged it, therefore Plaintiff's claim should be dismissed. However, there is sufficient circumstantial evidence in this case to support a reasonable inference that cut on Plaintiff's left 2nd toe was caused when he banged his foot while running across the deck. Accordingly, Defendant's Motion for Summary Judgment should be denied.

WHEREFORE, the Plaintiff respectfully requests that Defendants Motion for Summary Judgment be denied.

    Paul Willett, Plaintiff
    By his attorneys,

    <u>/s/ David F. Anderson</u>
    David F. Anderson
    Latti & Anderson LLP
    30-31 Union Wharf
    Boston, MA 02109
    (617) 523-1000

DATED: 03/01/06

CERTIFICATE OF SERVICE

      I hereby certify that on the above date, I electronically filed the above pleading with the Clerk of the Court using CM/ECF system which will send notification of such filing(s) to the following:

Robert E. Kiely
Regan & Kiely LLP
85 Devonshire St.
Boston, MA 02109
(617) 723-0901

                                              /s/ David F. Anderson
                                              David F. Anderson

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL WILLETT,<br>    Plaintiff<br><br>VS.<br><br>E & S FISHERIES, INC.,<br>    Defendant | CIVIL ACTION<br>NO: 04-12449-EFH |

### AFFIDAVIT OF PAUL WILLETT

I Paul Willett, under oath do depose and state as follows:

1. I am the Plaintiff in the above matter.

2. At the time I cut my toe I was a deckhand employed by the Defendant on the F/V LIBERTY.

3. At the time I cut my toe I was on watch with a deckhand the crew called "Mikey" although I do not believe that this was his real name.

4. "Mikey" was an extremely small person. He was no taller than 5"4" and weighed between 100 and 125 pounds.

5. Because of his extremely small size "Mikey" was unable and unfit to perform the normal work of a deckhand on a scalloper such as the F/V LIBERTY. "Mikey" could not carry the heavy containers of scallops and could not perform the normal and expected duties of a deckhand that required normal strength, reach or size.

6. When setting out a scallop dredge on a scalloper such as the F/V LIBERTY each of the two dredges (port and starboard) must be "flared". Flaring a dredge requires a deckhand to reach

out over the rail and attach a rope to the bail of the dredge. Once the rope is attached the dredged is lowered into the water and the rope is used to rotate the dredge so that the dredge it is set out right side up.

7.  I have been commercial scalloping for 20 years and am familiar with the proper and customary procedure for setting out scallop dredges on a commercial scallop vessel such as the F/V LIBERTY. The proper and customary procedure for setting out the scallop dredges on a scallop vessel such as the F/V LIBERTY is as follows: While the vessel is under weigh the port side deckhand goes to the port side gallus frame and the starboard side deckhand goes to the starboard side gallus frame. Each deckhand then passes a line through the bail of his respective dredge. The captain then lowers each dredge while each deckhand flares the dredge so that each sets out right side up. Both dredges are then set out together so that one dredge is not set on top of the other.

8.  Because of his size, "Mikey" could not flare a dredge if the vessel was moving or if the weather was at all rough. As a result when "Mikey" was on watch working as a deckhand, the opposite side deckhand was required to quickly flare the dredge on one side and then run to the opposite side of the vessel to flare the other dredge. The captain of the F/V LIBERTY operates the winch controls from the wheelhouse and observes the entire set out procedure. At the time I cut my toe the Captain of the F/V LIBERTY was aware that "Mikey" could not perform his normal task of flaring his dredge and was aware that I as the opposite side deckhand would have to quickly flare one dredge and then run across deck to flare the opposite dredge.

9.  On the day of my accident I was on working as a deckhand and was on watch with "Mikey" as the opposite side deckhand. The vessel was under weigh when the Captain signaled to set out and as a result when I was required to quickly flare one dredge and then run across the

2

deck and flare the opposite dredge. At the time of my accident I was running across the deck to flare the opposite side dredge when I hit my foot on a pile of scallops laying on wooden decking. I hit my foot on the pile of scallops because I was running because I had to flare both dredges. Had one of the other deckhands (other than Mikey) been on watch with me I would not have been running across the deck, rather I would have flared one side while the other deckhand flared the opposite side. Upon hitting my foot while running across the deck, I felt something stab my left 2nd toe. After the gear was set, I sat down, and took off my boot and shook it out. While doing so I observed bits of shell in my boot. For the remainder of the watch I felt pain where my left 2nd toe had been stabbed. At the end of the watch I removed my boots and socks and observed a small cut on my left 2nd toe in the location I had felt the stab.

10.     In the days that followed the wound on my 2nd toe became infected. I was initially taken to a hospital in Point Pleasant, New Jersey for treatment of this infected cut. After numerous hospitalizations the doctors finally where able to get the infected cut under control but not until they amputated my 2nd toe.

11.     The proper and customary procedure for setting a dredge on a commercial scalloper requires two deckhands to set and flare the dredges. Because "Mikey" was not big enough to perform the normal and expected work of a deckhand when setting out, I was required to quickly perform the work of one deckhand and then run across deck and perform the work of the other deckhand. If "Mikey" had been able to flare his dredge I would not have been running to the opposite side of the deck and I would not have hit my foot and cut my 2nd toe.

Pursuant to 28 U.S.C. 1746 I declare under penalty of perjury that the foregoing is true and correct. Executed on this 1st Day of March 2006.

*[signature]*

PAUL WILLETT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                              )
PAUL WILLETT,                 )
    Plaintiff                 )
                              )    CIVIL ACTION
VS.                           )    NO: 04-12449-EFH
                              )
E & S FISHERIES, INC.,        )
    Defendant                 )
_____)

### PLAINTIFF'S RESPONSE TO DEFENDANTS STATEMENT OF UNDISPUTED MATERIAL FACTS
### AND
### PLAINTIFF'S STATEMENT OF FACTS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED

Now comes the Plaintiff in the above captioned matter and pursuant to Local Rule 56.1 submits the below response to Defendants Statement of Undisputed Material Facts and Plaintiff's statement of facts to which there is a genuine issue to be tried.

    Plaintiff's Response to Defendants Statement of Undisputed Material Facts

1. Admitted.

2. Admitted.

3. Admitted, except that the vessel was not laying at the time of the Plaintiff's injury, rather it was under weigh. Depo. of Willett, Page 44, (Def. Ex. "A")

4. Admitted, except the boots worn by the Plaintiff were rubber not leather. Depo. of Willett, Page 45 (Def. Ex. A).

5. Admitted

6. Admitted

7. Admitted

8. Admitted

9. Admitted

10. Admitted

11. Admitted

12. Admitted

13. Admitted

14. Admitted

15. Admitted

16. Admitted

17. Admitted

18. Admitted

19. Admitted

20. Admitted

21. Admitted

22. Admitted

23. Admitted

24. Admitted

25. Admitted

26. Admitted.

Plaintiff's Statement of Material Facts for Which there is a Genuine Issue to be Tried.

1. Whether the deckhand ("Mikey") assigned by the Defendant to work the watch with the Plaintiff at the time Plaintiff cut his toe was competent to perform the normal tasks of a

deckhand on a commercial scalloper including the job of flaring the dredge. <u>Affidavit of Paul Willett</u>, P. 1-2, Para. 4-8. (Attached as Ex. "A") <u>Depo. of Plaintiff</u>, P. 40-41 ("he was useless") (Attached as Def. Ex. A)

2.      Whether the Defendant was on notice that "Mikey" was not competent to perform the normal tasks of a deckhand on a commercial scalloper including the job of flaring the dredge. <u>Affidavit of Paul Willett</u>, P. 2, Para. 8. (Attached as Ex. "A"); <u>Depo of Plaintiff</u>, P. 41.

3.      Whether the incompetence of the fellow deckhand "Mikey" required that the Plaintiff perform the jobs of two deckhands at once thereby forcing him to run from one side to another. <u>Affidavit of Paul Willett</u>, P. 2-3, Para. 8-9. (Attached as Ex. "A").

4.      Whether the Plaintiff running from one side of the deck to the other in order to perform the job of two deckhands caused or contributed to the Plaintiff stubbing his foot and cutting his toe. <u>Affidavit of Paul Willett</u>, P. 2-3, Para. 9-11. (Attached as Ex. "A").

            Paul Willett, Plaintiff
            By his attorneys,

            <u>/s/ David F. Anderson</u>
            David F. Anderson
            Latti & Anderson LLP
            30-31 Union Wharf
            Boston, MA 02109
            (617) 523-1000

DATED: 3/1/06

## CERTIFICATE OF SERVICE

I hereby certify that on the above date, I electronically filed the above pleading with the Clerk of the Court using CM/ECF system which will send notification of such filing(s) to the following:

Robert E. Kiely
Regan & Kiely LLP
85 Devonshire St.
Boston, MA 02109
(617) 723-0901

                                                        /s/ David F. Anderson
                                                        David F. Anderson